IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

FRANK HICKS,

                            Defendant.

CRIMINAL ACTION
NO. 13-547

### OPINION

**Slomsky, J.**                                               **September 25, 2020**

## I.      INTRODUCTION

Before the Court is Defendant Frank Hick's Motion for Compassionate Release under 18

U.S.C. § 3582(c)(1)(A).[1]  (Doc. No. 63.)  Defendant is serving a 169-month sentence at the Federal

---

[1]    18 U.S.C. § 3582(c)(1)(A) provides, in part,

> . . . the court, upon motion from the Director of the Bureau of
> Prisons, or upon motion of the defendant after the defendant has
> fully exhausted all administrative rights to appeal a failure of the
> Bureau of Prisons to bring a motion on the defendant's behalf or the
> lapse of 30 days from the receipt of such a request by the warden of
> the defendant's facility, whichever is earlier, may reduce the term of
> imprisonment (and may impose a term of probation or supervised
> release with or without conditions that does not exceed the unserved
> portion of the original term of imprisonment), after considering the
> factors set forth in section 3553(a) to the extent that they are
> applicable, if it finds that –
>
> > (i) extraordinary and compelling reasons warrant such a
> > reduction;
> >
> > . . .
>
> and that such a reduction is consistent with the applicable policy
> statements issued by the Sentencing Commission[.]

Correctional Institution at Schuylkill, Pennsylvania ("FCI Schuylkill") and seeks compassionate release from incarceration. Defendant cites his good conduct in prison and concerns over the COVID-19 pandemic and its potential effect on his underlying health conditions. The Government opposes the Motion, asserting that Defendant does not present any condition identified by the Centers for Disease Control and Prevention ("CDC") as creating an increased risk of COVID-19, has a considerable portion of his sentence to be served, and would present a danger to the community if released. (Doc. No. 69 at 1.) For the following reasons, Defendant's Motion for Compassionate Release will be denied.

## II.   BACKGROUND

On October 8, 2013, a grand jury returned an Indictment charging Defendant with bank robbery, in violation of 18 U.S.C. § 2113(a).[2] (Doc. No. 1 at 1.) The Indictment alleges that on August 27, 2013, Defendant robbed a TD Bank in Bensalem, Pennsylvania and stole approximately $1,429. (Id.) This robbery occurred less than one month after Defendant was

---

[2]   18 U.S.C. § 2113(a) reads:

> Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or
>
> Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, or such savings, and such loan association and in violation of any statute of the United States, or any larceny—
>
> Shall be fined under this title or imprisoned not more than twenty years, or both.

released from a 96-month sentence for six other bank robberies while he was on supervised release. (Doc. No. 69 at 1.)

On March 17, 2014, Defendant pled guilty to the new bank robbery charge. (Doc. Nos. 31-32.) On July 9, 2014, he was sentenced to serve 151 months imprisonment. The term of supervised release imposed for a prior bank robbery (04-292) was revoked, and he received an additional 18-month sentence to run consecutively to the 151-month sentence. (Doc. No. 35.) In or around September 2012, Defendant began serving his sentence. (Doc. No. 69 at 2.) To date, Defendant has served approximately 86 months of his 169-month term.[3] (Id.)

On April 10, 2020, Defendant requested the Warden at FCI Schuylkill to file a Motion for Compassionate Release. (Id. at 2.) The Warden denied his request on April 16, 2020. (Id.)

On June 17, 2020, Defendant, proceeding pro se, filed the instant Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A).[4] (Doc. No. 63.) In his Motion, Defendant claims that his underlying medical condition and good conduct make him a candidate for compassionate release. (Doc. No. 63 at 3-7.)

First, regarding his medical condition, Defendant asserts that his underlying condition presents the requisite "extraordinary and compelling reason" under 18 U.S.C. § 3582(c)(1)(A) to support his release from prison. (Id. at 4.) He contends that his medical condition places him "at a heightened risk of severe or fatal injury if he became infected with the COVID-19 virus." (Id.) In particular, Defendant claims to have a "life long history of chronic asthma . . . [and that] during

---

[3]   At the time Defendant filed his Motion, he had served 84 months.

[4]   On July 13, 2020, Defendant filed an identical copy of his Motion for Compassionate Release, which he entitled "Affidavit of Truth and Fact." (Doc. No. 66.) Since this second filing is identical to his Motion for Compassionate Release under consideration here, this Opinion also covers that submission and the Court will refer to both filings collectively as the "Motion."

his incarceration, [he] has developed hypertension and a form of diabetes." (Id.)  According to Defendant, these conditions are quite severe and he continues to "survive[] by compliance [with] a human immunoid virus medication."[5] (Id.)  He further claims that "[i]f at any moment [his] body become resistant to [the] medication, a simple cold or flu could become fatal." (Id.)

To evidence his medical condition, Defendant consented to the release of his medical records for the past year from FCI Schuylkill.  (See id. at 4.) ("I . . . am granting the court's permission [sic] to examine all my medical records to validate my claims.")  The records show that Defendant had a history of asthma and was prescribed an Albuterol inhaler to use as needed. (Doc. No. 69, Ex. A at 3.)  However, at a checkup on April 23, 2020, Defendant was examined and the records state findings as follows: "[no] pulm[onary] problems and doesn't think he's actually touched his [Albuterol inhaler] in a year." (Id. at 2.)  The inhaler was discontinued, and the records show that "[patient] no longer smoking or having issues and has been exercising / self pulm[onary] rehab completed." (Id. at 4.)  The records also reveal that his most recent blood pressure reading on April 23, 2020 was 115/73, which is not indicative of hypertension.[6] (Id. at 2.)  Defendant's cardiovascular health was "within normal limits." (Id. at 3.)  Finally, Defendant's A1C blood level on December 3, 2019 read 5.7.  A reading of 6.5 or higher indicates the presence of diabetes.[7] (Id. at 47-48.)  Therefore, Defendant does not have a form of diabetes.

---

[5]   Defendant's medical records show that he has asymptomatic moderate HIV ("human immunodeficiency virus"). His HIV has been controlled with medication for some time.

[6]   According to the CDC, hypertension is defined as "blood pressure that is higher than normal, with a normal reading being anything below 120/80.

[7]   According to the CDC, "[a]n A1C below 5.7% is normal, between 5.7 and 6.4% indicates you have prediabetes, and 6.5% or higher indicates you have diabetes."

Second, regarding his good conduct, Defendant claims that his release from prison would be appropriate in light of the relevant Section 3553(a) sentencing factors, which a court is required to consider under Section 3582(c)(1)(A) of the Compassionate Release Statute.[8]  (Doc. No. 63 at 3, 5.)  Defendant asserts that his crime is not a "crime of violence" under a provision of the United States Sentencing Guidelines ("U.S.S.G."), specifically § 4B1.2(a),[9] he has demonstrated good

---

[8]  When modifying a sentence under 18 U.S.C. § 3582(c)(1)(A), a court must consider the relevant sentencing factors set forth in 18 U.S.C. § 3553(a), which include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>> a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> b. to afford adequate deterrence to criminal conduct;
>> c. to protect the public from further crimes of the defendant; and
>> d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]
>> . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

[9]  Under §4B1.2(a), the term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –

> (1)  has an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use of unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

Defendant argues that his conviction for bank robbery does not "ha[ve] as an element the use, attempted use, or threatened use of physical force against another person," which is required by the element-of-force clause. (Doc. No. 63 at 3.)  In United States v. Wilson, 880 F.3d 80

behavior while incarcerated, and his risk of reoffending is low.  (Id. at 3, 5-6.)  Defendant points

out that while incarcerated, he completed a six-month drug and alcohol program as well as a course

in philosophy.  (Id. at 6.)  Furthermore, Defendant notes that transfer to a low custody facility is

pending.  When transferred, he plans to "start working at the UNICOR factory,[10] or take the

[Residential Drug Abuse Program ("RDAP")][11] . . . [and] will also attend the Threshold

Program."[12]  (Id. at 5.)  In addition, Defendant argues that an assessment done on him in prison

predicts that it is unlikely that he will reoffend.  (Id. at 5.)  Based on his claims of good behavior

and low-risk classification, Defendant states that he has earned roughly 11 months in good time

credits.  (Doc. No. 69 at 2.)  He argues that when the 11 months are combined with the 85 months

he has served thus far, he has completed more than 50% of his full-term without any incident

reports.  (Doc. No. 63 at 6.)  If released, Defendant seeks to earn a Certified Public Accountant

("CPA") certificate and pursue a career in accounting.  (Id.)

On August 18, 2020, the Government filed a Response in Opposition to Defendant's

Motion for Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (Doc. No. 69.)  The Government

argues that Defendant has not presented any extraordinary and compelling reason to support his

compassionate release.  (Id. at 12.)  The Government asserts that Defendant continues to present a

---

(3d. Cir. 2018), the court held that unarmed bank robbery constitutes a "crime of violence"
under the Sentencing Guideline § 4B1.2.  Defendant's robbery of a TD bank thus falls within
the definition of "crime of violence" under U.S.S.G. §4B1.2(a)(1).

[10]  UNICOR is the trade name for Federal Prison Industries, which is a wholly owned Government
corporation.

[11]  The RDAP is a treatment program where offenders live in a unit separate from the general
prison population and participate in a half-day of programming and a half-day of work, school,
or vocational activities.

[12]  The Threshold Program is spiritual growth program for inmates.

danger to the community and his release would be inappropriate in light of the relevant Section 3553(a) sentencing factors.  (Id. at 13.)

 The Government submits first that Defendant has not demonstrated that his medical condition constitutes an extraordinary and compelling reason for his release.  The Government notes that Defendant's medical records show that he does not have hypertension, diabetes, or asthma.  (Id. at 3.)  While the Government concedes that Defendant may have had asthma in the past, it emphasizes that he "does not presently suffer from asthma."  (Id. at 4.)  Additionally, the Government points out that diabetes is not a risk factor recognized by the CDC.  (Id. at 3.)

 The Government also submits that the Bureau of Prisons ("BOP") has taken significant steps to mitigate the risk of COVID-19 in prison.  (Id. at 4.)  It highlights that the BOP prepared for a potential COVID-19 outbreak in January 2020 and implemented its Coronavirus Action Plan on March 13, 2020.  (Id. at 5.)  Currently, BOP operations are governed by Phase Nine of the Action Plan, which FCI Schuylkill follows.  (Id. at 6.)  The plan requires (1) all inmates to be secured in their assigned quarters, (2) limited group gatherings and movement across facilities, (3) strong encouragement of all inmates and staff to wear face coverings issued by the BOP, (4) screening all faculty and new inmates for COVID-19 exposure, risk factors, and symptoms, and (5) suspension on many or all volunteer, social, and legal visits as well as contractors performing non-essential services.  (Id. at 5-6.)  The Government stresses that these efforts have been successful at FCI Schuylkill.  (Id. at 8.)  So far, the facility has only reported one positive case and that inmate has since recovered.  (Id.)

 Next, the Government avers that the relevant Section 3553(a) sentencing factors do not warrant his release.  (Id. at 13.)  The Government argues that Defendant continues to present a danger to the community due to his extensive criminal history and tendency to reoffend when

released.  (<u>Id.</u> at 13-14.)  Specifically, the Government notes that his has six prior convictions for bank robbery as well as convictions for drug trafficking, possession of a controlled substance, and disorderly conduct.   (<u>Id.</u> at 14.)  Furthermore, the Government highlights that Defendant has a history of noncompliance with court orders.  In 1996, while on probation for possession of a controlled substance, Defendant violated his probation and was sentenced to 6 to 12 months imprisonment.  (<u>Id.</u>)  Then, while on pretrial release for violating a new term of probation, he was arrested for drug trafficking and sentenced to one year of probation.  (<u>Id.</u>)  Defendant once again violated probation and was sentenced to 4 to 8 months imprisonment.  (<u>Id.</u>)  Also while on pretrial release for these two offenses, he was arrested and charged with robbery of an 82-year-old woman. (<u>Id.</u>)  He was sentenced to 3 to 23 months imprisonment with immediate parole to be followed by 2 years of probation. (Id.)  He violated probation three separate times.  (<u>Id.</u>)  While on supervised release for that robbery, he was convicted of drug possession, disorderly conduct, and six bank robberies.  (<u>Id.</u>)  Finally, the Government argues that releasing Defendant while he has 73 months remaining on his sentence does not reflect the seriousness of his offense, promote respect for the law, or provide just punishment.  (<u>Id.</u>)

### III.   DISCUSSION

#### A.  The Analytical Framework for a Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A).

Usually, a district court "may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c).  There are, however, "a few narrow exceptions" to this "rule of finality," <u>Freeman v. United States</u>, 564 U.S. 522, 526 (2011), including the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A).  As amended by the recently enacted First Step Act, this statute now empowers a district court to modify a term of imprisonment on a defendant's motion after the

defendant has exhausted his administrative remedies.[13]  18 U.S.C. § 3582(c)(1)(A)(i).  As noted

above, the statute provides, in part, that a court

> may reduce the term of imprisonment (and may impose a term of
> probation or supervised release with or without conditions that does
> not exceed the unserved portion of the original term of
> imprisonment), after considering the factors set forth in [18 U.S.C.
> § 3553(a)] to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a
> > reduction; . . .
>
> and that such a reduction is consistent with applicable policy
> statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).  Congress, however, has not defined the term "extraordinary and

compelling reasons," except to the extent that "[r]ehabilitation of the defendant alone" is

insufficient to constitute an extraordinary and compelling reason.  28 U.S.C. § 994(t).  Instead,

Congress delegated the authority to define "extraordinary and compelling reasons" to the United

States Sentencing Commission.  Section 1B1.13 of the Sentencing Guidelines explains that a

sentence reduction under Section 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a),
> that—
>
> > (1) (A) Extraordinary and compelling reasons warrant the
> > reduction; . . .

---

[13]  A defendant may file a motion for compassionate release directly with a district court after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  In other words, before a defendant can make such a request to the Court, he "must at least ask the Bureau of Prisons (BOP) to do so on [his] behalf and give [the] BOP thirty days to respond" Raia, 954 F.3d at 955, and if the BOP does respond adversely within the thirty days, to then exhaust any available administrative appeals during that period.  See 18 U.S.C. § 3582(c)(1)(A)).  Here, Defendant has met the exhaustion requirement because he sent his request to the Warden at FCI Schuylkill on April 10, 2020, which was denied on April 16, 2020.  He filed the instant Motion on June 17, 2020.  (Doc. No. 63.)

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

Application Note 1 to Section 1B1.13 discusses the meaning of "extraordinary and compelling reasons," and lists three specific qualifying circumstances: (1) a defendant's medical condition, (2) age, or (3) family circumstances. U.S.S.G. § 1B1.13 app. note 1(A)–(C). This Note states:

Provided the defendant [is not a danger to the safety of any other person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant. The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

10

      (C) Family Circumstances.

          (i)      The death or incapacitation of the caregiver of the defendant's minor child or minor children.

          (ii)     The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

U.S.S.G. § 1B1.13 n.1(A)-(C).  Application Note 1 further provides a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)."  U.S.S.G. § 1B1.13 n.1(D).[14]

The Application Notes only provide "helpful guidance" and are "not ultimately conclusive[.]"  United States v. Rodriguez, No. 03-271, 2020 U.S. Dist. LEXIS 58718, at *17 (E.D. Pa. Apr. 1, 2020) (quoting United States v. Fox, No. 14-03, 2019 U.S. Dist. LEXIS 115388, at *5 (D. Me. July 11, 2019).  Since the Sentencing Commission has not yet amended Section 1B1.13 or its commentary to account for the First Step Act, a district court has the authority to independently assess whether there are extraordinary and compelling reasons warranting a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).  See Rodriguez, 2020 U.S. Dist. LEXIS 58718, at *17.

In general, however, "[i]n the context of the current global pandemic, [c]ourts around the country have [only] granted compassionate release where the defendant suffers from a serious condition that increases the likelihood of severe consequences from COVID-19."  United States v.

---

[14]  Although by its express language Section 1B1.13 applies to motions brought by the Director of the BOP, the current consensus is that the First Step Act removed this requirement.  See generally, United States v. Rodriguez, No. 03-271, 2020 U.S. Dist. LEXIS 58718, at *17 (E.D. Pa. Apr. 1, 2020) (considering whether a defendant bringing a direct-to-court motion for compassionate release demonstrated "extraordinary and compelling reasons" and using Section 1B1.13 as "helpful guidance.").

Somerville, No. 12-225, 2020 U.S. Dist. LEXIS 93935, at *18 (W.D. Pa May 29, 2020) (internal

quotation omitted).  In the Third Circuit, this means that "the mere existence of COVID-19 in

society and the possibility that it may spread to a particular prison alone cannot independently

justify … release."  United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).  In addition, "[m]ost,

though not all, of the cases where compassionate release has been granted also involved some

showing that COVID-19 is actually present, usually to a significant degree, in the facility where

the prisoner is incarcerated."  Somerville, 2020 U.S. Dist. LEXIS 93935, at *18.  Thus, "a prisoner

seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition,

or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected

by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility

where the prisoner is held."  Id. at *20.

  If a district court determines that an extraordinary and compelling reason exists, it must

then weigh that reason against the Section 3553(a) factors to determine if a sentence reduction is

warranted and, if so, the extent of such reduction.  See id. at *2 (explaining that "the Court must

weigh [the] extraordinary circumstances against the ordinary sentencing factors under 18 U.S.C.

§ 3553(a).").  Section 3553(a), however, establishes factors for a court to consider in initially

imposing a sentence, so not every factor applies to motions for compassionate release.  In the

instant case, as noted earlier, the pertinent factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> > a.  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > b.  to afford adequate deterrence to criminal conduct;

    c.  to protect the public from further crimes of the defendant; and

    d.  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

    . . .

(6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a)(1)-(2), (6).  If a balance of a defendant's extraordinary and compelling reason and the Section 3553(a) factors support a reduced sentence, the court may reduce the prison term, modify the terms of supervised release, or both.

### B.  Defendant's Motion for Compassionate Release Will Be Denied.

Defendant's Motion will be denied because he has not shown an extraordinary and compelling reason for his release.  Further, the relevant Section 3553(a) factors counsel against a reduction or modification of his sentence.  Each of these conclusions is discussed in turn below.

#### 1.  Defendant's Medical Condition Does Not Present an Extraordinary and Compelling Reason for his Release.

Defendant has not shown an extraordinary and compelling reason to justify compassionate release.  Although Defendant alleges that he suffers from hypertension, diabetes, and asthma, his medical records do not support his claim that the currently has these conditions.  Moreover, these alleged illnesses do not place him at a uniquely high risk of grave illness or death if infected by COVID-19.

Defendant's medical records do not show that he suffers from hypertension, diabetes, or asthma.  (Doc. No. 69, Ex. A at 2-3, 48.)  On December 3, 2019, Defendant was administered an A1C blood test and the result indicated that he does not have diabetes.  (Id. at 48.)  Additionally, when examined on April 23, 2020, Defendant's doctor noted that he did not believe Defendant has

used his inhaler within the last year and decided to discontinue the prescription.  (Id. at 2.)  On April 23, 2020, his doctor indicated that Defendant does not suffer from hypertension.  (Id. at 3.)

Moreover, his alleged hypertension, diabetes, and asthma do not present the kind of vulnerability to COVID-19 needed to justify compassionate release.  See United States v. Cheek, No. 2:18-CR-91-PPS, 2020 U.S. Dist. LEXIS 113700, at *8 (N.D. Ind. June 29, 2020 ) (noting that there is "nothing about [defendant's] asthma and allergies in general which would constitute an extraordinary or compelling reason to reduce [defendant]'s sentence."); United States v. Snell, No. CCB-17-602, U.S. Dist. LEXIS 127310,  at *5 (D. Md. July 20, 2020) (denying defendant's motion for compassionate release, noting that prediabetes does not increase vulnerability to COVID-19); United States v. Falci, No. 17-228, 2020 U.S. Dist. LEXIS 108498, at *12-14 (D.N.J. June 22, 2020)  (denying defendant's motion for compassionate release although defendant suffered from hypertension because "[t]here is no indication that Defendant suffers from pulmonary hypertension or any other 'serious heart condition' that the CDC has identified as a high-risk factor.")

Furthermore, Defendant has not shown an actual, non-speculative risk of contracting COVID-19 at FCI Schuylkill.  To date, only one inmate has been diagnosed with COVID-19 and that individual has since recovered.  (Doc. No. 69 at 8.)  As a result, Defendant's risk of contracting COVID-19 is entirely speculative. There are no exceptional or compelling reasons to justify his release from imprisonment.[15]

---

[15]   Defendant is 42 years old.  He does not suffer from a terminal illness or any serious cognitive impairment, and he is not a caregiver to minor children.  Thus, these factors listed in the Sentencing Guideline Manual are not relevant here.

14

      **2.   The Section 3553(a) Sentencing Factors Do Not Weigh in Favor
of Defendant's Release.**

The relevant Section 3553(a) sentencing factors also do not support granting Defendant compassionate release.  First, it is unlikely that Defendant's release would afford adequate deterrence or protect the public from further crimes by Defendant.  <u>See</u> 18 U.S.C. § 3553(a)(2)(b-c).  Although Defendant's crimes appear to be non-violent only in the sense that no weapons were used, he has seven prior convictions for bank robbery and committed the bank robbery for which he is incarcerated only one month after his release from prison for committing the other six bank robberies.[16]  (Doc. No. 69 at 1.)  On many occasions, while on probation or supervised release, Defendant has consistently violated his release terms and even committed other crimes.  (<u>Id.</u> at 13-14.)  Given this background, there is no assurance that Defendant would be deterred from committing additional crimes if released.  In short, he is a danger to the community.

Second, releasing Defendant after he has served 96 months of his 169 month sentence would depreciate the seriousness of the offense, not promote respect for the law, nor provide just punishment for his conduct.  <u>See</u> 18 U.S.C. § 3553(a)(2)(a).  Defendant has only served about one year after the middle point of his 14-year sentence.  (Doc. No. 69 at 2.)  Given the timing of Defendant's request, his release is currently not advisable under these Section 3553(a) factors.

Third, if Defendant were released now, it would result in "unwarranted sentence disparities among defendants with similar records."  <u>See</u> 18 U.S.C. § 3553(a)(6).  Courts have denied Compassionate Release to defendants who were convicted of robbery and have criminal backgrounds similar to Defendant.  For example, in <u>United States v. Cox</u>, the district court denied a defendant's motion for compassionate release despite the fact that he suffered from numerous

---

[16] As noted, he received a consecutive sentence of 18 months imprisonment for one of these robberies (04-292).

medical conditions.  No. CR08-399RSL, 2020 U.S. Dist. LEXIS 122272, at *10, *13 (W.D. Wash. July, 13 2020).  There, the defendant had 5 years remaining on a 235-month sentence for bank robbery and that court stated that "[the defendant's] history of returning to commit bank robberies each time he is released from prison . . . outweigh [his] good behavior during his current term of imprisonment."  Id. at *5.

Fourth, to the extent that Defendant's sentence must provide him with necessary "educational or vocational training, medical care, or other correctional treatment," 18 U.S.C. § 3553(a)(2)(d), this is a neutral factor.  While the extent of Defendant's education prior to incarceration is unclear, he apparently is obtaining an education in prison and will potentially work when transferred to a low custody facility.  (Doc. No. 63 at 5-6.)  Noteworthy is the fact that Defendant wants to participate in the RDAP program.  (Doc. No. 63 at 5.)  He is also fortunate that the BOP is equipped to handle his HIV condition, which is currently under control with medication.  (Id.)

## IV.    CONCLUSION

For the foregoing reasons, Defendant has not shown an extraordinary and compelling reason for his release.  Moreover, the Section 3553(a) factors also do not warrant release.  Thus, Defendant's Motion for Compassionate Release (Doc. No. 63) will be denied.  An appropriate Order follows.